IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMUEL BENITEZ,                        §
                                       §
           Petitioner,                 §
                                       §
V.                                     §
                                       §        No. 3:13-cv-1483-L-BN
                                       §
WILLIAM STEPHENS, Director             §
Texas Department of Criminal Justice,  §
Correctional Institutions Division,    §
                                       §
           Respondent.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Samuel Benitez, a Texas prisoner, has filed an application for writ of

habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the

application should be denied.

**Background**

Petitioner was charged with murder by a Dallas County grand jury. He was

found guilty at trial and sentenced by the jury to term of life imprisonment.

Petitioner's conviction was affirmed on direct appeal. *See Benitez v. State*, No. 08-09-

00034-CR, 2010 WL 3030489 (Tex. App. – El Paso, Aug. 4, 2010, pet. ref'd). His

application for state post-conviction relief was denied without written order on the

findings of the trial court. *See Ex parte Benitez*, WR-78,427-01 (Tex. Crim. App. Nov.

7, 2012). Petitioner then filed this action in federal district court.

The underlying facts of this case were set forth at length by the Texas appellate

court on direct review. *See Benitez*, 2010 WL 3030489, at \*1-\*4. Waitresses Alma Avalos, Jesenia Avalos, Jenny Patricia "Patty" Abrego, and Marina "Lety" Garcia all testified that Petitioner was a regular customer of the Metropolis nightclub in Dallas, Texas, was known as "El Cocho," and had a thick mustache. Petitioner often visited the Metropolis with his friend, Alfredo Diaz – known as "Compita" – who was identified by Abrego as Petitioner's "worker" or "bodyguard." Angel Plancarte was also a frequent customer of the Metropolis club, and Plancarte had a personal relationship with Jesenia Avalos. Both Petitioner and Plancarte were believed to sell drugs.

Angel Plancarte was shot to death on June 4, 2008. The testimony of all four waitresses indicated that Petitioner was impatient to contact Plancarte before his murder. The state court explained,

> Alma testified that in the days preceding Angel's death, [Petitioner] offered her $40,000 to take a person she "more or less" thought was Angel to a hotel. Jesenia testified that [Petitioner] tried to get her to call Angel for him on June 1 or 2. [Petitioner] told her that Angel owed him money and would not pay him. When Jesenia told Angel that [Petitioner] was looking for him and wanted his money, Angel told her not to worry about his problems. Marina testified that on June 3, [Petitioner] mentioned to her that Angel owed him some money and that he would find a way to collect it.
>
> Jesenia testified that on June 4, [Petitioner], Compita, and a woman named Lupe went to Metropolis. [Petitioner] told Jesenia that he was desperate about not getting paid and that he was going to collect the money one way or another. [Petitioner] bought drinks for Jesenia, Marina, Janet, and Patty. He became upset when Janet went to sit with some other men. [Petitioner] went outside, and when he came back he showed the girls that he had a gun with a black grip. Patty and Marina were scared and Patty told the disc jockey that [Petitioner] had a gun. After Patty reported the gun, [Petitioner] and Compita left the club.

*Id.* at \*1. Jesenia Avalos, Abrego, and Garcia later saw Petitioner in the parking lot of

the Metropolis. Petitioner was driving a wine-colored Jeep Cherokee, and Compita was in the passenger seat. Garcia testified that she saw a gun between Petitioner's legs. Petitioner invited the Metropolis waitresses to Lago Mexico, which was a nearby 24-hour bar and restaurant. They declined the invitation but saw Petitioner drive towards the club. When Jesenia Avalos arrived home, she saw Angel Plancarte. He told her that he was "going to do something" and that he would be back. Telephone records introduced at trial established that there were a series of phone calls between Petitioner and Plancarte on June 4, 2008, the last of which occurred at 4:14 a.m.

Rogelio Portillo, a security guard at Lago Mexico, testified that he saw two cars pull into the restaurant's parking lot at approximately 5:00 a.m. The first vehicle, a Jeep Cherokee, backed into a parking space, and the other vehicle, a Suburban, parked perpendicular to the front of the Jeep. The passenger of the Jeep Cherokee, a man with a bald head, got out of that vehicle. The driver, an older man with a thick mustache, approached the Suburban and got into the passenger side of that vehicle. Less than five minutes later, Portillo heard gunshots and saw the two men from the Jeep running. The older man with the mustache threw his keys to the younger man, who ran to the driver's side of the Jeep and drove the vehicle away. Dallas Police Department officers later discovered that the driver's side window of the Suburban had been shot out, there were bullet strikes on the back left side of the vehicle, and there was a bullet hole in the headrest. Plancarte suffered gunshot wounds to the head, right arm, and trunk, and evidence indicated that the gun was fired from a distance of one to five feet, from the right side of the victim. The officers also found a fully loaded

revolver in Plancarte's pocket.

After Petitioner was identified by the waitresses, he was arrested, Mirandized, and provided a videotaped statement. According to the state court,

> [Petitioner] told multiple versions of the events on June 4, 2008. Initially, he said that he was at Lago Mexico alone and went inside to drink a beer. He claimed that he was waiting to talk to Angel when a guy came "out of nowhere" and shot Angel. [Petitioner] next said that "he was put up to this, that his life was threatened, and that some associates of his had sent this guy to do this to Angel," but denied any involvement. [Petitioner]'s third version of the shooting was that he drove up with Compita and that, while he was talking to Angel, Compita went around the Suburban and shot Angel. [Petitioner] told the detective that his job was to lure Angel to the location. Also during the interview, [Petitioner] provided a buccal swab and told the officers where they could locate Compita. The detectives identified Compita as Alfredo Diaz, and the female witnesses all identified him as Compita from photo lineups. Telephone records did not reveal any calls between Angel and Compita. After his arrest, Compita requested an attorney and was not interviewed. Detective John Palmer obtained a search warrant and consent from Compita's landlord to search the bedroom Compita rented. The officers seized a 38 Special revolver, which was later determined to be the murder weapon, and a box of ammunition from Compita's room. Officers later recovered a letter from Compita to his landlord which said, "Please destroy the gun that's in my room."

*Benitez*, 2010 WL 3030489, at *3. Petitioner was found guilty of murder and sentenced to life imprisonment.

Petitioner contends that (1) the evidence was factually and legally insufficient to justify conviction; (2) he received ineffective assistance of trial counsel because his attorney (a) failed to conduct a thorough pretrial investigation; (b) did not object to the inclusion of the Texas law of parties in the jury charge; (c) neglected to file motions to suppress; and (d) did not interview or subpoena Petitioner's co-defendant; (3) the trial court erred in presenting an instruction on the law of parties; and (4) his due process

rights were violated when the law of parties was included in the jury instructions, which occurred without sufficient notice, was an improper amendment of the indictment, and was not supported by the evidence.

## Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption

applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

-6-

sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S.Ct. 1584 (2013).

And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792.

Finally, where, as here, the state court adjudicated an ineffective assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington,* 131 S. Ct. at 785.

## Analysis

Factual Sufficiency

Petitioner challenges the factually sufficiency of the evidence. However, such a claim is not cognizable on federal habeas review. Under the law in effect when Petitioner's appeal was decided, Texas appellate courts had the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim.

App. 1996).[1] A "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson v. Virginia,* 443 U.S. 307 (1979). *See Clewis*, 922 S.W.2d at 129. Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* The Texas appellate courts' power to review the evidence's factual sufficiency derives from Texas statutory and constitutional authority, *see id.* at 129-30; *see also Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), and there is no corresponding right of review under the United States Constitution, *see, e.g.*, *Schrader v. Whitley,* 904 F.2d 282, 284 (5th Cir. 1990) ("[I]n challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof.").

In short, this Court has no authority to conduct a review of the factual sufficiency of the evidence. This ground for relief should therefore be overruled.

Legal Sufficiency

Petitioner claims that the evidence was legally insufficient because no forensic

---

[1] In *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), a plurality of the Texas Court of Criminal Appeals overruled *Clewis* and held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 895.

evidence – such as DNA or fingerprints – linked him to the murder, he was at the Metropolis nightclub at the time of the crime, the firearm used in the shooting was tied to Diaz, Portillo could not identify Petitioner, and none of the trial witnesses personally observed the murder of Plancarte.

A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319; *see also Gibson v. Collins,* 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *See Jackson,* 443 U.S. at 319; *Gibson,* 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader,* 904 F.2d at 287.

Federal courts are bound by state statutes and case law in determining the elements of an offense. *See Foy v. Donnelly,* 959 F.2d 1307, 1314 (5th Cir. 1992). Under Texas law, murder is defined as, among other things, intentionally or knowingly causing the death of an individual. *See* TEX. PEN. CODE ANN. § 19.02(b)(1). A person is criminally responsible for the conduct of another individual if he intentionally "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

Here, the state appellate court conducted a thorough review of the evidence and concluded that it was legally sufficient to justify Petitioner's conviction. The El Paso Court of Appeals recounted the evidence of an ongoing dispute between Petitioner and the victim, including Petitioner's offer of $40,000 to Alma Avalos to take someone whom she thought was Angel Plancarte to a hotel, Petitioner's attempts to get Jesenia

Avalos to call Plancarte for him because Plancarte owed him money, Petitioner's statement to Marina Garcia that Plancarte owed him money and that he would find a way to collect it, and Petitioner's comment to Jesenia Avalos "that he was desperate and that he was going to collect the money one way or another." *Benitez*, 2010 WL 3030489, at *6. The state appellate court observed that both Garcia and Abrego saw Petitioner with a black-handled gun at Metropolis on the night of Angel Plancarte's murder and that Garcia saw the gun between Petitioner's legs in his Jeep outside the club as well. *See id.*

That court also recounted Portillo's testimony that he saw a Jeep Cherokee and a Suburban pull into the parking lot of Lago Mexico on June 4, 2008 and observed the younger, bald-headed passenger stand by the Jeep while the driver – a man fitting Petitioner's description – approached the Suburban and sat in the front seat of the vehicle. *See id.* Portillo stated that he saw the two men from the Jeep running in the parking lot and observed the older man run around the back of the Suburban with his hand up before the older man threw the keys to the younger man, who ran to the driver's side of the Jeep and drove out of the parking lot. *See id.* The state appellate court further explained:

> Even though the officers recovered the murder weapon from Compita's house with a note to the landlord asking to destroy it, there was enough evidence for the jury to conclude that [Petitioner] shot Angel while he was sitting in the passenger's seat of Angel's vehicle and then gave the murder weapon to Compita. Additionally, a rational jury could have concluded that [Petitioner] directed Compita to kill Angel. This theory is evidenced by the testimony of Jesenia and Marina that [Petitioner] said he would find a way to collect the money Angel owed him and Patty's testimony that [Petitioner] said that Compita would do whatever

[Petitioner] told him.

[Petitioner] admitted to Detective Ibarra that he was present at Lago Mexico during Angel's murder. In fact, [Petitioner]'s statement to Detective Ibarra indicated that [Petitioner] was more than merely present. [Petitioner] also told several versions of the events at Lago Mexico and ultimately admitted that his job was to lure Angel to the location. He told Detective Ibarra that he drove to Lago Mexico with Compita and that, while he was talking to Angel, Compita went around the Suburban and shot Angel, which is consistent with [the medical examiner]'s testimony that the GSR could have been deposited on the ceiling liner of Angel's vehicle if someone stood outside the vehicle and pointed a gun from the passenger side. Because we conclude that the evidence is legally sufficient, we overrule [the] Point of Error[.]

*Id.*

Petitioner has failed to prove that the state court's rejection of his legal sufficiency claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Accordingly, this ground for relief should be denied.

Ineffective Assistance of Trial Counsel

Petitioner alleges that he received ineffective assistance of counsel when his trial attorney failed to conduct a thorough pretrial investigation by hiring a Spanish language interpreter and requesting assistance from the Mexican consulate, did not move to strike part of the jury charge or to suppress certain physical evidence and testimony, neglected to interview or call as a witness Petitioner's accomplice "Compita," and did not object to the introduction of statements made by Petitioner during his interrogation.

*Pretrial Investigation*

-11-

Petitioner claims that his attorney "failed to conduct an adequate amount of pretrial investigation and preparation for trial," including his refusal to "seek the services of a Spanish speaking interpreter from the Mexican Consulate, in addition to requesting legal assistance from representatives of the Mexican Consulate." *See* Dkt. No. 4 at 13. The state habeas judge denied this ineffective assistance claim, explaining:

> [Petitioner]'s allegations regarding the representation he received from trial counsel are largely conclusory and insufficient to state a claim entitling him to relief.... [Petitioner] has not alleged that he did not understand trial proceedings or explain why he needed an interpreter. [Petitioner] does not even allege what sort of interpreter he thinks he should have had. The Court finds that [Petitioner] has not alleged how his case would have been different if he had been informed of his rights under the Vienna Convention. The Court finds [Petitioner] does not allege how his case would have proceeded differently if he had been informed of the deportation consequences of his conviction. The Court finds that [Petitioner] does not allege what sort of experts he thinks trial counsel should have consulted, or how that might have affected the proceedings.

Dkt. No. 11-7 at 67.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner does not allege with specificity what the investigation would have revealed or the substance of any missing testimony, and Petitioner fails to explain how the results of the investigation or the testimony would have changed the outcome of the trial. To the extent that Petitioner believes that additional witnesses should have been interviewed in preparation for trial, there is no evidence that any witness was available to testify at trial, no evidence of the contents of any such witness's testimony,

and no evidence that the testimony would have been favorable.

Petitioner does not prove that the state court's determination was unreasonable. Accordingly, he is not entitled to relief on this issue.

*Failure to Object to the Law of Parties*

Petitioner claims that his trial attorney was ineffective for failing to challenge the jury instruction on the Texas law of parties because the evidence did not support such a charge, the law of parties was not pled in the indictment, and Petitioner received no notice that the law of parties would be included in the jury instructions. *See* Dkt. No. 4 at 13-15. The law of parties applies to murder cases in Texas, and a trial court may charge the jury on the law of parties even if there is no such allegation in the indictment. *See Allen v. Stephens,* No. 3:12-cv-2014-P, 2013 WL 5545390, at *5 (N.D. Tex. Oct. 8, 2013) (citing *English v. State,* 592 S.W.2d 949, 955 (Tex. Crim. App. 1980)). Because it was unnecessary under Texas law for the indictment to include such language or provide notice to a defendant, counsel was not ineffective for raising this meritless objection. *See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997).

Moreover, in denying Petitioner's claim of legal insufficiency, the state appellate court explained that the evidence was sufficient to establish Petitioner's guilt either as the principal actor or, under the law of parties, for directing Compita to kill Angel Plancarte. *See Benitez,* 2010 WL 3030489, at *6. Implicit in that determination is the court's finding that the evidence at trial was sufficient to justify a jury charge on the law of parties. Petitioner has not established that this finding was unreasonable in any way.

-13-

*Failure to File Motion to Suppress*

Petitioner contends that his lawyer was ineffective for failing to move to suppress the pistol discovered in the residence of Alfredo Diaz, the testimony about two handguns and an amount of marijuana found in the possession of Petitioner's female companion upon his arrest, the in-court identification by Rogelio Portillo, and the evidence of DNA testing performed by Tara Johnson, who did not testify at trial. *See* Dkt. No. 4 at 16-17. Failing to file a motion to suppress does not constitute *per se* ineffective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986). The Supreme Court has explained that,

> [w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* at 375. The inquiry turns on whether a hypothetical motion to suppress would have been successful. *See United States v. Oakley,* 827 F.2d 1023, 1025 (5th Cir. 1987). Defense counsel cannot be faulted for failing to raise a baseless objection. *See. e.g.,* *Sones v. Hargett,* 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a frivolous issue).

The state habeas court denied this claim. It held that

> [Petitioner] does not specify what motions to suppress or motions in limine he thinks trial counsel should have filed.... The Court finds that [Petitioner] does not allege a sufficient legal basis for why the testimony of certain State witnesses should have been suppressed. The Court finds that [Petitioner] has not alleged any facts which, if true, would entitle him to relief.

-14-

Dkt. No. 11-7 at 68.

In the face of these state court findings, Petitioner has not provided any evidence to suggest that a motion to suppress any of this evidence would have any merit. He does not explain how the handgun taken from Compita's residence or testimony regarding the gun and narcotics taken from Petitioner's companion was inadmissible. To the extent that he challenges an in-court identification by Portillo, the record shows that Portillo did not identify him in court at all. *See* Dkt. No. 12-1 at 96-103. Finally, counsel was not deficient for failing to raise a *Crawford* claim about the testimony of Lewis-Krick, because Petitioner's trial took place in November 2008 – before the Supreme Court extended *Crawford v. Washington*, 541 U.S. 36, 54 (2004), to medical reports created for testimonial purposes. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009) ("The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error"). The Fifth Circuit has repeatedly held that, "there is no general duty on the part of defense counsel to anticipate changes in the law." *Green v. Johnson,* 116 F.3d 1115, 1125 (5th Cir. 1997). Even if the admission of hearsay testimony of the medical reports prepared by Tara Johnson was improper, Petitioner has not established that it was prejudicial in any way.

Petitioner has failed to rebut the state habeas court's findings regarding his allegations of ineffective assistance in connection with his failure to file certain motions to suppress. As such, federal habeas relief is precluded.

*Failure to Call Alfredo "Compita" Diaz*

-15-

Petitioner claims that he received ineffective assistance of counsel because his attorney failed to interview Diaz and call him as a witness at trial. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Petitioner does not establish that Diaz was available and willing to testify, does not allege with specificity the substance of the missing testimony, and fails to explain how the testimony would have changed the outcome of the trial. Accordingly, he is not entitled to relief on this claim.

*Failure to Object to Custodial Statements*

Petitioner faults his counsel for failing to object to the admission of the oral statements that Petitioner made while in police custody. *See* Dkt. No. 4 at 19-20. Petitioner also states that he was denied a Spanish interpreter during the interrogation.

Petitioner has failed to show that his attorney was deficient for failing to object to this evidence. And the record establishes that Petitioner was interrogated in

Spanish and was properly informed of his constitutional rights under *Miranda*. After acknowledging his rights, Petitioner provided a knowing and voluntary statement to Detective Ibarra.

Petitioner has failed to establish that his attorney performed deficiently in failing to raise a meritless objection and has therefore failed to prove that the state court's denial of this claim was unreasonable.

Jury Charge Claims

Finally, Petitioner raises two claims challenging the trial court's decision to include an instruction on the Texas law of parties in the jury charge. *See* Dkt. No. 4 at 21-26. As described above, and as observed by the state habeas court, "if the evidence supports a charge on the law of parties, the court may submit a charge on parties even thought here is no such allegation in the indictment." Dkt. No. 11-7 at 69-70 (citing *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978)). The state appellate court essentially found that the evidence was legally sufficient for conviction under the law of parties. *See Benitez*, 2010 WL 3030489, at *6 ("a rational jury could have concluded that [Petitioner] directed Compita to kill Angel"). Petitioner has not established that the law of the parties instruction violated any Constitutional right or that the state habeas court's finding was contrary to, or involved an unreasonable application of, clearly established Supreme Court jurisprudence.

The state habeas court also found Petitioner's challenges to the jury charge to be procedurally barred because Petitioner failed to raise them on direct appeal. *See* Dkt. No. 11-7 at 69. A federal court may not consider the merits of a habeas claim if a

state court has denied relief due to a procedural default. *See Sawyer v. Whitley,* 505 U.S. 333, 338 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *See Harris v. Reed,* 489 U.S. 255, 261-62 (1989); *see also Smith v. Collins,* 977 F.2d 951, 955 (5th Cir. 1992). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn,* 457 U.S. 255, 262-63 (1982); *see also Johnson v. Puckett,* 176 F.3d 809, 824 (5th Cir. 1999). A federal court may consider a procedurally defaulted claim if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Under Texas law, claims that could have been raised on direct appeal and that are presented for the first time on state collateral review are procedurally defaulted. *See Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "'the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review.'" *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005) (quoting *Busby,* 359 F.3d at 719). Petitioner has failed to establish cause and actual prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. This claim is therefore procedurally barred.

Cumulative Error

Petitioner also appears to invoke the cumulative error doctrine. *See* Dkt. No. 3

-18-

at 5. It is well settled in the Fifth Circuit that cumulative error is an independent basis for federal habeas corpus relief where the individual errors involved matters of constitutional dimension that, taken together, "so infected the entire trial that the resulting conviction violates due process." *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992)). Neither meritless claims nor claims that are not prejudicial can be cumulated, regardless of the total number of such errors raised. *See Derden*, 978 F.2d at 1461. Petitioner has not shown that the alleged errors, as a whole, cast doubt upon the reasonableness of the state court's determination. As discussed above, none of the Petitioner's claims in the present case has merit, and he has not proven that the alleged errors caused prejudice.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 5, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE